# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                 :

UNITED STATES OF AMERICA             :

                              :

        v.                      :      08-CR-1213 (JFK)

                              :

JAMAL YOUSEF,                 :

                              :

              Defendant.      :

------------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF JAMAL YOUSEF TO DISMISS THE INDICTMENT

Melinda Sarafa
SARAFA LAW LLC
80 Pine Street, Floor 33
New York, NY 10005
Tel: 212-785-7575
Fax: 212-785-7577

*Counsel to Defendant Jamal Yousef*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND.....................................................................................................1

ARGUMENT

      THE EXTRATERRITORIAL APPLICATION OF THE NARCO-TERRORISM
      STATUTE TO JAMAL YOUSEF VIOLATES THE DUE PROCESS CLAUSE
      OF THE FIFTH AMENDMENT ......................................................................................4

      A.     The Due Process Clause of the Fifth Amendment Limits the
             Extraterritorial Application of Federal Statutes to Defendants Who
             Have a Sufficient Nexus to the United States..........................................................4

      B.     There is No Nexus Between Mr. Yousef and United States
             Sufficient to Satisfy the Due Process Limit on Application of the Narco-
             Terrorism Statute to Mr. Yousef's Alleged Extraterritorial Conduct ......................7

CONCLUSION........................................................................................................................10

**PRELIMINARY STATEMENT**

This memorandum of law is respectfully submitted in support of the motion of Jamal Yousef to dismiss the indictment pursuant to the Due Process Clause of the Fifth Amendment. Mr. Yousef is a foreign national who is charged with conspiring to violate a United States law that makes it a crime to engage in unlawful drug activity knowing or intending to provide anything of pecuniary value to a person or organization that has engaged or engages in terrorist activity. All of the alleged conduct that purportedly constitutes the offense in this case occurred outside the territorial jurisdiction of the United States. Because Mr. Yousef has not engaged in any activity that would make it reasonable for him to expect to be prosecuted in the United States, the extraterritorial application of the narco-terrorism statute to him in this case violates the Due Process Clause of the Fifth Amendment. Accordingly, the indictment in this case must be dismissed.

**FACTUAL BACKGROUND**

On July 6, 2009, while Mr. Yousef was imprisoned in Honduras on charges unrelated to this case, a grand jury in the Southern District of New York returned an indictment charging him with one count of conspiring to violate 21 U.S.C. § 960a, the so-called "narco-terrorism" statute. Section 960a makes it a federal crime to "engage[] in conduct that would be punishable under section 841(a) of this title if committed within the jurisdiction of the United States, or attempts or conspires to do so, knowing or intending to provide, directly or indirectly, anything of pecuniary value to any person or organization that has engaged or engages in terrorist activity (as defined in section 1182(a)(3)(B) of Title 8) or terrorism (as defined in section 2656(d)(2) of Title 22)."[1] 21

---

[1] Section 841(a) of Title 21 makes it a crime "for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to

U.S.C. § 960a.

The alleged conspiracy involved an agreement by Mr. Yousef and other co-conspirators to exchange military-grade weapons for use by the Fuerzas Armadas Revolucionarias de Colombia (the "FARC") for cocaine supplied by the FARC. Ind. ¶6. No actual members of the FARC participated in the negotiations, nor were any actual weapons or cocaine exchanged. Rather, the negotiations, which took place in September and October 2008 in Honduras, were conducted by confidential sources working with the United States Drug Enforcement Administration ("DEA") who purported to represent the FARC. Ind. ¶¶6, 10. All conversations in furtherance of the alleged conspiracy took place either during in-person meetings in Honduras, or via telephone calls that likewise took place in Honduras. Ind. ¶10. To the extent that Mr. Yousef participated in any such conversations, he did so while imprisoned in Honduras. Sarafa Decl. ¶6.

The conspirators allegedly claimed that the weapons to be exchanged had been stolen from Iraq, and were stored in Mexico. Ind. ¶¶6, 10(a). The cocaine that was to be provided in exchange for the weapons was to be delivered to the coast of Honduras. Ind. ¶10(h).

Mr. Yousef is not a national of the United States. Sarafa Decl. ¶5. According to discovery materials provided by the Government, Mr. Yousef is a dual citizen of Sweden and Lebanon. *Id.*

The indictment does not allege that the confidential sources represented to Mr. Yousef or his alleged co-conspirators that the weapons were intended for use in connection with any activity involving or affecting the United States or United States nationals.[2] The only alleged representation made by the confidential sources concerning the intended use of the weapons was

distribute or dispense, a counterfeit substance." 21 U.S.C. § 841(a).

[2]  It should be noted that, as no actual members of the FARC participated in the alleged conspiracy, and no actual weapons or drugs were produced or exchanged, the alleged conspiracy in fact had no effects related to the United States or United States nationals.

that they "were for use by the FARC." Ind. ¶6.

According to the indictment, the FARC is dedicated to the violent overthrow of the Government of Colombia, and has been designated by the United States Secretary of State as a terrorist organization. Ind. ¶1.  The indictment alleges that, in order to protect its interests in the cocaine trade, the FARC has directed violent acts against United States persons and property interests in order to dissuade the United States from continuing its efforts to assist the Government of Colombia with its cocaine fumigation efforts. Ind. ¶2. Such acts allegedly include the murder and kidnapping of United States nationals, as well as the bombing of a restaurant in Bogota, Colombia, frequented by United States nationals. Ind. ¶3. These allegations concerning the FARC and its activities are all set forth solely as background to the alleged conspiracy. Ind. ¶¶1-5.  The indictment does not allege that any of this background information was communicated by the confidential sources to Mr. Yousef or his alleged co-conspirators.

On the evening of August 18, 2009, as Mr. Yousef was released from custody in Honduras, he was met by armed and masked agents of the United States government who forced him into a vehicle, drove him to a helicopter, and flew him to another aircraft that ultimately transported him to New York. Sarafa Decl. ¶ 7. On August 19, 2009, Mr. Yousef was arraigned on the indictment before a magistrate judge in the Southern District of New York and has remained in continuous custody since. *Id.*

<u>ARGUMENT</u>

**THE EXTRATERRITORIAL APPLICATION OF THE NARCO-TERRORISM STATUTE TO JAMAL YOUSEF VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

Because there is an insufficient nexus between Mr. Yousef and the United States, the extraterritorial application of the narco-terrorism statute to Mr. Yousef violates the Due Process Clause of the Fifth Amendment of the United States Constitution.

**A.      The Due Process Clause of the Fifth Amendment Limits the Extraterritorial Application of Federal Statutes to Defendants Who Have a Sufficient Nexus to the United States**

In *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003), the Second Circuit addressed for the first time the extent to which the Due Process Clause limits the United States' assertion of jurisdiction over criminal conduct committed entirely outside of United States territory. Recognizing the Ninth Circuit view that "[i]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair," *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990) (citation omitted), the Second Circuit expressly adopted this standard as the rule in this circuit. 327 F.3d at 111.

Applying this standard to the defendants in *Yousef*, the Second Circuit concluded that assertion of jurisdiction was consistent with due process where "[t]he defendants conspired to attack a dozen United States-flag aircraft in an effort to inflict injury on this country and its people and influence American foreign policy." *Id.* at 112. With respect to the defendants' bombing of a Philippine Airlines flight from Manila to Japan, which killed one Japanese passenger and injured others, the court likewise concluded that assertion of jurisdiction did not

4

offend due process because the attack was a "test-run" in furtherance of the conspiracy to attack United States-flag aircraft. *Id.* As the court stated, "[g]iven the substantial intended effect of their attack on the United States and its citizens, it cannot be argued seriously that the defendants' conduct was so unrelated to American interests as to render their prosecution in the United States arbitrary or fundamentally unfair." *Id.*

Similarly, in *United States v. Al Kassar*, 582 F.Supp.2d 488 (S.D.N.Y. 2008), the district court concluded that there was a sufficient nexus between the defendants and the United States where the indictment charged defendants with "voluntarily conspiring to sell millions of dollars worth of weapons to the FARC, *with the expectation that those weapons would be used to kill United States nationals*, as well as taking active steps towards consummating that sale (including receipt of laundered monies from New York)." 582 F.Supp.2d at 494 (emphasis added). Because the defendants were charged with "conspiring to sell weapons to the FARC *in an effort to inflict injury on the United States and its people*," *id.* (emphasis added), their prosecution in the United States comported with due process and was not arbitrary or fundamentally unfair. *Id.*

As the Ninth Circuit has observed, "[t]he nexus requirement serves the same purpose as the 'minimum contacts' test in personal jurisdiction. It ensures that a United States court will assert jurisdiction only over a defendant who 'should reasonably anticipate being haled into court' in this country." *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Thus, for instance, application of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501 *et seq.* (formerly 46 U.S.C. app. § 1903), to a foreign national apprehended on a foreign-flag vessel on the high seas comports with due process where there is evidence that the

defendant intended to smuggle drugs into United States territory. *See, e.g., Davis*, 905 F.2d at 249; *Klimavicius-Viloria*, 144 F.3d at 1257-59; *United States v. Khan*, 35 F.3d 426, 429-30 (9th Cir. 1994).[3]

The Ninth Circuit has declined to require a nexus to the United States, as a matter of due process, where the customary international law principle of universal jurisdiction applies. *United States v. Shi*, 525 F.3d 709, 722-23 (9th Cir. 2008). As the Second Circuit explained in *Yousef*, "[t]he universality principle permits a State to prosecute an offender of any nationality for an offense committed outside of that State and without contacts to that State, but only for the few, near-unique offenses uniformly recognized by the 'civilized nations' as an offense against the 'Law of Nations.'" *Yousef*, 327 F.3d at 103.[4] This limited category of offenses traditionally included only piracy, but has been extended to include war crimes and "crimes against humanity." *Id.* at 104. In *Shi*, the acts with which the defendant was charged constituted acts of piracy, leading the Ninth Circuit to conclude that due process does not require a nexus between the defendant and the United States because the "the universal condemnation of the offender's conduct puts him on notice that his acts will be prosecuted by any state where he is found." 525

---

[3] On the other hand, where a foreign national is apprehended on a *stateless* vessel on the high seas, the MDLEA can be applied consistent with due process even in the absence of a nexus requirement. *United States v. Caicedo*, 47 F.3d 370, 372-73 (9th Cir. 1995); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993); *United States v. Alvarez-Mena*, 765 F.2d 1259, 1266 (5th Cir. 1985); *United States v. Howard-Arias*, 679 F.2d 363, 371-72 (4th Cir. 1982); *United States v. Marino-Garcia*, 679 F.2d 1373, 1384 (11th Cir. 1982). This is because a defendant on a stateless vessel attempts to avoid the law of *all* nations, and thereby can be charged with notice that *any* nation may exert jurisdiction over him. *See Caicedo*, 47 F.3d at 372-73.

[4] The Second Circuit's discussion of the universality principle in *Yousef* occurred in the context of its analysis of subject matter jurisdiction, not the due process argument analyzed elsewhere in *Yousef* and specifically at issue here. Unlike the Ninth Circuit, the Second Circuit has not addressed whether principles of international law may guide the inquiry into whether the due process nexus requirement is satisfied in a particular case.

F.3d at 723.[5] Importantly, the Second Circuit expressly held in *Yousef* that because there is no international consensus concerning the definition or proscription of terrorism, "terrorism – unlike piracy, war crimes, and crimes against humanity – does not provide a basis for universal jurisdiction." 327 F.3d at 107-08.

**B.    There is No Nexus Between Mr. Yousef and the United States Sufficient to Satisfy the Due Process Limit on Application of the Narco-Terrorism Statute to Mr. Yousef's Alleged Extraterritorial Conduct**

Mr. Yousef is a foreign national whose alleged criminal conduct took place entirely outside the territory of the United States. He is specifically alleged to have engaged in negotiations in Honduras with purported representatives of the FARC to exchange weapons located in Mexico for drugs to be supplied by the FARC in Honduras. While the indictment alleges that the FARC is a terrorist organization that has targeted United States nationals, there is no indication that Mr. Yousef was aware of such facts or otherwise knew or intended that his alleged acts would have any effect in or related to the United States.[6] The fact that actual members of the FARC (none of whom were involved in this case) may have such knowledge or intention is not sufficient to justify the exercise of extraterritorial jurisdiction as to Mr. Yousef.

The facts of this case are fundamentally unlike those in cases where courts have found a nexus between defendants and the United States sufficient to satisfy due process. In *Yousef*, the Second Circuit held that the nexus requirement was satisfied because the defendants' conduct was purposefully aimed at the United States – they conspired to attack United States-flag aircraft

---

[5]  Although the Ninth Circuit has noted that "[i]nternational law principles may be useful as a rough guide of whether a sufficient nexus exists between the defendant and the United States so that application of the statute in question would not violate due process," *Davis*, 905 F.2d at 249 n.2, it expressly cautioned that "danger exists that emphasis on international law principles will cause us to lose sight of the ultimate question: would application of the statute to the defendant be arbitrary or fundamentally unfair?" *Id.*

[6]  As previously noted, as no weapons or drugs were actually produced or exchanged in this case, the alleged acts in fact had no effect in the United States or elsewhere.

and actually bombed a foreign-flag aircraft as a test run in furtherance of the conspiracy. 327 F.3d at 112. Similarly, in *Al Kassar*, the defendants allegedly conspired to sell weapons to the FARC with the express expectation that such weapons would be used to kill United States nationals. 582 F.Supp.2d at 494. In *Davis* and other cases in which the MDLEA was applied to foreign nationals apprehended on foreign-flag vessels on the high seas, there was evidence that the defendants intended to transport drugs into United States territory. *See, e.g., Davis*, 905 F.2d at 249; *Klimavicius-Viloria*, 144 F.3d at 1257-59; *United States v. Khan*, 35 F.3d 426, 429-30 (9th Cir. 1994).

In contrast, Mr. Yousef is not alleged to have had any knowledge, intention or expectation that the weapons he allegedly agreed to provide to the FARC would be used to produce any effect on the United States or United States nationals. He is not even alleged to have any knowledge of the FARC's activities, and certainly not of its activities related to the United States and United States nationals. The facts of this case simply present no basis upon which to conclude that it would be reasonable for Mr. Yousef to expect to be forcibly removed from Honduras by agents of the United States Government and transported to a federal court in New York to be detained on charges carrying the potential for 20 years to life imprisonment. The Due Process Clause of the Fifth Amendment requires that the defendant himself have some nexus to the United States sufficient to ensure that application of a federal criminal statute to him is not arbitrary or fundamentally unfair. There is no such nexus in this case, which presents a stark example of arbitrary and fundamentally unfair application of United States law to a foreign national who has done nothing to expect to be haled into court here.

The nexus requirement cannot be dispensed with in this case by reference to international law. As noted, the principle of universal jurisdiction is limited to a very specific set of offenses

8

which the Second Circuit has expressly held does not include terrorism. *See Yousef*, 327 F.3d at 107. Given the lack of an international consensus "on the definition of terrorism or even its proscription," *id.* at 106, there certainly can be no international consensus concerning the definition or proscription of "narco-terrorism," a relatively new hybrid offense combining unlawful drug activity with an intent to provide something of pecuniary value to a person or organization that engages in terrorism. As a result, a foreign national is by no means on notice that engaging in such conduct entirely outside the United States, with no intent to cause any effect in the United States, could subject him to prosecution in the United States.

Nor is this a case in which the statute at issue was enacted to implement an international treaty that arguably adds an additional layer of notice to foreign offenders that their conduct will be prosecuted by any state signatory. *See, e.g.*, *Shi*, 525 F.3d at 723 (noting that due process was at least partly satisfied because the statute in question implemented an international agreement that provides foreign offenders with notice that their conduct will be prosecuted by any state signatory). Accordingly, applying the statute to a foreign national whose conduct is not in any way directed at the United States is indeed arbitrary and fundamentally unfair.

Under the circumstances presented here, subjecting Mr. Yousef to the extraterritorial jurisdiction of the United States, and placing him in jeopardy of 20 years to life imprisonment in the United States, deprives him of fundamental fairness and due process in violation of the Fifth Amendment. Accordingly, the indictment must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Mr. Yousef respectfully submits that application of the narco-

terrorism statute to Mr. Yousef violates the Due Process Clause of the Fifth Amendment, and

respectfully urges this Court to grant his motion to dismiss the indictment.

Dated:  June 28, 2010
        New York, NY

                                        Respectfully submitted,


                                        s/Melinda Sarafa
                                        Melinda Sarafa
                                        SARAFA LAW LLC
                                        80 Pine Street, Floor 33
                                        New York, NY 10005
                                        Tel: 212-785-7575
                                        Fax: 212-785-7577

                                        *Counsel to Defendant Jamal Yousef*

**Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA            :

          -v.-                      :    S3 08 CR 1213 (JFK)

JAMAL YOUSEF,                       :

          Defendant.                :

- - - - - - - - - - - - - - - - - -x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT YOUSEF'S MOTION TO DISMISS

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of
America

Jeffrey A. Brown
Christopher L. Lavigne
Assistant United States Attorneys
 Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the motion to dismiss filed by defendant Jamal Yousef. Yousef argues that the nexus between his conduct and the United States is insufficient to justify extraterritorial application of Title 21, United States Code, Section 960a to him, and that the Court's exercise of jurisdiction would therefore violate the Due Process clause of the Fifth Amendment of the United States Constitution.

As discussed below, Yousef's motion should be denied. Yousef's and his co-conspirators' alleged conduct has such nexus with the United States that it is not remotely arbitrary or fundamentally unfair to try him in the United States. First, according to Yousef and his co-conspirators themselves, the weapons offered for sale were American weapons stolen from American armed forces in Iraq. Second, it was made explicitly clear in the negotiations that the organization purchasing the weapons – the FARC – trafficked large quantities of narcotics to the U.S. Third, and more broadly, Yousef and his co-conspirators knew and understood that the transaction would benefit a narco-terrorist organization which has targeted, and has been well known to target, United States interests in Colombia and elsewhere.

## STATEMENT OF FACTS

From about 1964, the FARC has been an international terrorist group dedicated to the violent overthrow of the democratically elected government of Colombia and the world's largest supplier of cocaine. Indictment ("Ind.") ¶1. The FARC was first designated a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act in October 1997, and was re-designated in October 2003 and October 2005, and remains so designated. Ind. ¶1. For several years, in response to United States support for the Colombian government and its antinarcotics efforts, FARC leadership directed its members to target United States citizens and United States interests in Colombia. Ind. ¶2.

Beginning in July 2008, Yousef and his co-conspirators negotiated with confidential sources working with the DEA to exchange military-grade weapons for thousands of kilograms of cocaine. Ind. ¶6. Yousef, described by co-conspirators as the owner of the weapons involved in the proposed transaction and the head of the organization, was an international arms trafficker who negotiated the deal by telephone from prison in Honduras. Ind. ¶7.

In September 2008, a DEA confidential source ("CS-1") purporting to represent the FARC met with a co-conspirator ("CC-1") who is an associate of the defendant Yousef. Ind. ¶10a.

2

During their recorded conversations, CS-1 explicitly informed CC-1 that he represented the FARC in a leadership capacity.[1] Furthermore, CS-1 made explicit the FARC's violent revolutionary agenda,[2] and CC-1 acknowledged that his organization was familiar with the FARC, and that he was aware of the history and origins of the organization.[3]  In describing the weapons available for exchange, CC-1 indicated that some of the weapons were American weapons stolen from United States forces in Iraq.[4]  In a subsequent telephone conversation with Yousef, who was still incarcerated at the time, CS-1 reiterated his FARC affiliation.[5] In a Mirandized post-arrest statement, Yousef acknowledged knowing that he was negotiating with the FARC.

In October 2008, CS-1 met with another co-conspirator ("CC-2").  Ind. ¶10g.  CC-2 identified himself as an associate of both Yousef and CC-1, and asserted to CS-1 that Yousef was the

---

[1] "As you may understand, I represent an organization -- I'm going to … to mention its name so that you can understand me- in the FARC we are used to taking risks." See Exhibit A to the Declaration of Jeffrey A. Brown at 12-13.
[2] "… if I fall in the Revolutionary Forces, there are another five behind me. And one doesn't matter. So, the person doesn't matter. What matters is this group that is about an armed struggle to try to get what we want in our country." Brown Decl. Ex. A at 13.
[3] "[W]e're very aware of that … we know the … subversive movements in Colombia …. I know everything about the Bogotazo very well."  Brown Decl. Ex. A. at 25-26.
[4] "They're totally new and it's the latest generation, what the 'gringos' are using in Iraq. How did we obtain them? [From the 'gringos' themselves?]"; "I'll explain that as far as the American weapons are concerned, those were brought over from Iraq. They were stolen and purchased in Iraq." Brown Decl. Ex. A at 17, 19.
[5] "[A]s you know, I belong to an organization, and I answer to … to the top leadership of that organization." See Exhibit B to the Declaration of Jeffrey A. Brown at at 7, 8.

world's most significant arms trafficker.[6]  CS-1 explained to CC-2 that the FARC was involved in narcotics trafficking.[7]  After a discussion between CS-1, CC-2, and Yousef (who participated by telephone), CS-1 and CC-2 discussed a purchase price for the weapons of more than 8,000 kilograms of cocaine.

In a subsequent conversation with CC-1, CS-1 specifically delineated the FARC's role in supplying Mexican drug cartels with cocaine to be smuggled into the United States, and expressed that the FARC would prefer to deal directly in the U.S., but lacks the infrastructure to do so, and is forced to rely on Mexican cartels to deliver the product inside the U.S.[8] Similarly, CS-1 explained to CC-2 that a kilogram of cocaine has a different value depending on where it is delivered and sold; and used Miami and New York – two cities in the United States – to illustrate his point.[9]

---

[6] "The person, Jamal, [U/I] is boss [U/I] … On a world scale, he's the number one in arms." See Exhibit C to the Declaration of Jeffrey A. Brown, at 11.

[7]  "[W]e're not the only ones who have used this .. this resource.  The government has too.  We've had two presidents who've been elected thanks to money from drug trafficking … But now that we're taking advantage of that resource, we're the bad ones."  Brown Decl. Ex. C, at 29.

[8] "It would be good to have the infrastructure to be able to go and set ourselves up on the highways and avenues of the United States. But we don't have that kind of infrastructure. […] So, we have to depend on the infrastructure that several organizations in Mexico have." See Exhibit D to the Declaration of Jeffrey A. Brown, at 83-84.

[9] See Brown Decl., Ex. C at 101.

4

ARGUMENT

I.    THE EXTRATERRITORIAL APPLICATION
      OF THE NARCOTERRORISM STATUTE TO
      YOUSEF DOES NOT VIOLATE DUE PROCESS

Because there is a sufficient nexus between the conduct of Yousef and his co-conspirators and the United States, the extraterritorial application of Title 21, United States Code, Section 960a to Yousef does not violate the Due Process Clause of the Fifth Amendment of the United States Constitution.

A.    Applicable Law

The Second Circuit has held that "in order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." United States v. Yousef, 327 F.3d 56, 111 (2d Cir. 2003) (quoting United States v. Davis, 905 F.2d 245, 248-49 (9th Cir. 1990)). The purpose of the sufficient nexus test is the same as the minimum contacts test in personal jurisdiction: to ensure that federal courts "assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country." United States v. Al Kassar, 582 F.Supp.2d 488, 494 (S.D.N.Y. 2008) (quoting United States v. Klimavicius-Viloria, 144 F.3d 1249, 1257 (9th Cir. 1998)).

5

Many courts, including courts in this Circuit, have been guided by principles of international law in assessing whether a sufficient nexus exists. See, e.g., Goldberg v. UBS AG, 690 F. Supp. 2d 92, 106, 108-111 (E.D.N.Y. 2010) (setting forth and defining the five recognized principles of international law under which extraterritorial jurisdiction may be appropriate).

Courts have held the sufficient nexus test satisfied by a variety of factual circumstances. In Yousef, the Second Circuit held that the defendants had a sufficient nexus to the United States where they "conspired to attack a dozen United States-flag aircraft in an effort to inflict injury on this country and its people and influence American foreign policy." Yousef, 327 F.3d at 112. In Al Kassar, where the facts closely resembled those of the instant case, the District Court (Rakoff, J.) held that the defendants had a sufficient nexus to the United States where they conspired "to sell weapons to the FARC in an effort to inflict injury on the United States and its people." Al Kassar, 582 F. Supp. 2d at 494.

The defendant distinguishes Yousef and Al Kassar as presenting facts articulating a greater nexus to the United States than exists in the present case. This argument implicitly suggests that the courts in those cases set a minimum, or threshold, standard for the Due Process nexus

6

analysis.   However, nothing in the opinion of either court indicates intent to limit the valid assertion of jurisdiction to the factual circumstances of those cases, or to the type and extent of the nexus between the conduct alleged in those cases and the United States.   Each court merely applied the "arbitrary or fundamentally unfair" standard to the facts of the case at bar and concluded that the United States reasonably asserted jurisdiction over the defendants.   Notably, Yousef cites no case in which extraterritorial jurisdiction was found to be violative of Due Process, and indeed there may be no such case.   See United States v. Ruemayr, 530 F. Supp. 2d 1210, 1223 (D. N.M. 2008) ("[I]t appears that no federal court has invalidated the extraterritorial application of U.S. law on Due Process grounds.").

B.    Analysis

Applying the "arbitrary or fundamentally unfair" standard to the facts of this case yields no different result than in Yousef and Al Kassar.   There is nothing arbitrary or fundamentally unfair about the exercise of U.S. jurisdiction over an individual who conspires to engage in an illicit sale of weaponry stolen from the United States military for the benefit of a designated terrorist organization which, its representatives have explicitly informed the defendant and his

7

co-conspirators, finances its operations by trafficking large amounts of cocaine to the United States.  Simply put, the acts alleged in this indictment – the sale of stolen American weapons for the purpose of arming a narco-terrorist organization whose avowed principal cocaine market is the United States – can only be described as presenting a direct and significant nexus to the United States and its legitimate law-enforcement interests.

The United States has an obvious and legitimate interest in protecting the security of its military arsenal, anywhere its weapons are found throughout the world, and in prosecuting any individual who steals or provides a market for stolen U.S. military hardware.  The U.S. interest in combating the importation of illegal narcotics into its borders is similarly obvious and legitimate.  Courts have routinely found Due Process satisfied in narcotics-trafficking cases in which conduct undertaken entirely abroad is coupled with knowledge that narcotics will be imported into the United States, or that the conduct in question is likely to have effects in the U.S.  See, e.g., United States v. Muhammad-Omar, 323 Fed. Appx. 259, 261 (4th Cir. 2009) (Due Process not violated where drug trafficking in Afghanistan, Dubai and Ghana was accompanied by imputed knowledge that some narcotics were destined for the U.S.); United States v. Khan, 35 F.3d 426, 429-430 (9th Cir. 1994)

8

jurisdiction is proper if "the plan for shipping drugs [is] likely to have effects" in the U.S.). In this case, given the statements of the purported FARC representatives that the U.S. was the ultimate market for its narcotics, and that the bargained-for arms would support the FARC's activities, Yousef and his co-conspirators cannot deny knowing that the proposed transaction would have likely effects in the U.S. including, at the very least, the diversion and black-market disposition of U.S. Government property and the continued, and possibly augmented, importation of cocaine by the FARC into U.S. borders. More broadly, Yousef and his co-conspirators cannot deny knowing that the FARC was a terrorist organization and that the proposed transaction would benefit the FARC. The U.S. has a legitimate interest in combating international terrorism and in exercising jurisdiction over those who provide support to terrorist organizations, particularly where both the terrorist organization in question has targeted Americans with violent acts, and where the organization's narcotics trafficking is the root cause of significant criminal activity – in this case narcotics-trafficking activity – in the United States. See Goldberg, supra, 690 F. Supp. 2d at 108 n.26 ("a foreign defendant could reasonably expect to be haled into court in this

9

country for providing material support to terrorists, at least where there exists some further basis for jurisdiction.").[10]

The defendant denies knowledge of the FARC's ideology and activities, and of the possible effects in the U.S. of the proposed transaction.  These denials ignore what is plainly revealed in the recorded conversations that provide much of the evidence in the case: that Yousef was the avowed leader of the weapons trafficking organization and the owner of the weapons to be sold, who would know the U.S.-provenance of the weapons, and who would have been fully informed by his co-conspirators about their conversations with the purported FARC representatives, and who, in fact clearly was so informed:  Yousef admitted in a Mirandized post-arrest statement that he knew that he was negotiating with the FARC.  More generally, however, Yousef's denials of knowledge also ignore his liability for the acts and

_____

[10] Though international law provides only a rough guide to assist in the Court's analysis, jurisdiction in this case is consistent with four of the five international law principles:  (1) the objective territorial principle, conferring jurisdiction over acts performed outside the U.S. but which produce detrimental effects within the U.S.;  (2) the protective principle, conferring jurisdiction over foreigners for acts committed outside the U.S. that may impact the territorial integrity or security of the U.S., (3) the universality principle, which confers jurisdiction over extraterritorial acts for crimes so heinous as to be universally condemned, and (4) the passive personality principle, under which jurisdiction is based on the nationality of the victim.  See United States v. Clark, 315 F. Supp. 2d. 1127 (W.D. Wash. 2004).

statements of his co-conspirators, all of which acts and statements evince knowledge and understanding of the FARC's ideology, activities, and intentions.

Given the foregoing, it is not remotely "arbitrary and fundamentally unfair" for the court to exercise jurisdiction over Yousef. There is a direct and significant nexus between the conduct of Yousef and his co-conspirators and the U.S. and its legitimate interests. Tellingly, the answer to the companion inquiry in this context - whether the defendant in question "could reasonably expect to be haled into court in this country" based on the alleged conduct - confirms that jurisdiction is proper. The statements of both CC-1 and CC-2 during the course of the investigation reveal not simply that Yousef's and his co-conspirators could have expected to be haled into U.S. court, but that they did expect and fear that possibility - their greatest law enforcement preoccupation was not the Honduran authorities, but, rather, the American authorities. Throughout the recorded conversations with CC-1 and CC-2 are references to possible investigation by the FBI and the DEA.[11]

---

[11] See, e.g., Brown Decl. Ex. A, at 30-38 (CC-1 describing that the "gringos" were watching Yousef and that Yousef had lied to the FBI about the whereabouts of a cache of weapons); Brown Decl. Ex. B, at 57 (CC-2 explaining to CS-1 that "when I was on my way to see you now I

## CONCLUSION

Yousef and his co-conspirators sought to provide stolen American arms to the FARC, a U.S. State Department-designated foreign terrorist organization that has targeted American personnel and property and is responsible, at least in part, for the massive flow of illegal narcotics from Colombia through Central America and Mexico into the United States.  Under these circumstances, it cannot be said that the exercise of jurisdiction over Yousef is "arbitrary or fundamentally unfair." Jurisdiction is consistent with Due Process, and Yousef's motion is meritless and should be denied.

Dated:    New York, New York
          July 12, 2010

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


                       By: _____
                              JEFFREY A. BROWN
                              CHRISTOPHER L. LAVIGNE
                              Assistant United States Attorneys
                              (212) 637-1110/2325


had my reservations about you.  My reservations.  I'm like 'hmm, the DEA, the FBI.'").

12