```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA        :
                                :
     -against-                   :
                                :       No. S3 08 Cr. 1213 (JFK)
JAMAL YOUSEF,                    :       Memorandum Opinion and Order
     a/k/a "Talal Hassan         :
             Ghantou,"           :
                                :
                 Defendant.      :
-------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-5-12

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Jamal Yousef's ("Yousef" or "Defendant") motion for reconsideration of an August 23, 2010 opinion and order denying his motion to dismiss the Third Superseding Indictment. For the reasons that follow, the motion for reconsideration is denied.

## I.     Background

In a Third Superseding Indictment dated July 6, 2009, the Government alleges that Yousef and unnamed co-conspirators agreed to provide a cache of military-grade weapons to an individual purporting to represent the Fuerzas Armadas Revolucionarias de Colombia (the "FARC") in exchange for hundreds of kilograms of cocaine. (S-3 Indictment ¶¶ 6-7). The FARC is designated as a terrorist organization by the United States Government pursuant to Section 219 of the Immigration and Nationality Act. (Id. ¶ 1). Yousef is charged with conspiring to engage in narco-terrorism under 21 U.S.C. § 960a, which

1

provides a heightened sentence for anyone who engages in narcotics activity that would be punishable under 21 U.S.C. § 841(a), or conspires or attempts to do so, while knowing or intending to provide "anything of pecuniary value to any person or organization that has engaged or engages in terrorist activity . . . or terrorism."

Yousef was incarcerated in Honduras during the pendency of the charged conspiracy, and all of the overt acts allegedly taken in furtherance of the narco-terrorism conspiracy occurred abroad.  (S-3 Indictment ¶¶ 7, 10(a)-(h)).  On June 28, 2010, Yousef moved to dismiss the Third Superseding Indictment, arguing that extraterritorial application of the narco-terrorism statute violated the Fifth Amendment Due Process Clause because there was an insufficient nexus between Yousef's charged conduct and the United States such that Yousef could reasonably anticipate prosecution in this country.  At oral argument on the motion, held on August 10, 2010, the prosecutor maintained that the nexus between Yousef and the United States "is that this is an organization that is selling stolen military weapons from Iraq."  (Sarafa Decl., Ex. C, Aug. 10, 2010 Tr. at 14).  When asked, "Are you claiming that the weapons were actually stolen from our military, or are you claiming that somebody just said that they were?" the prosecutor replied, "Well, as of right now, of course I only have the statement.  I don't know that they

2

were or were not.  [Defense counsel] is right, we have not recovered the weapons.  So that's clear.  But again, Judge, on a motion to dismiss, the inference is that these [co-conspirators] are saying these things because they are true."  (Id. at 15).

The Court denied the motion to dismiss in an opinion and order dated August 23, 2010.  See United States v. Yousef, No. 08 Cr. 1213, 2010 WL 3377499 (S.D.N.Y. Aug. 23, 2010). Specifically, the Court found the "substantial intended effect" in or on the United States necessary to support the extraterritorial application of the narco-terrorism statute, see United States v. Yousef, 327 F.3d 56, 112 (2d Cir. 2003), primarily in recorded conversations between an unnamed co-conspirator and a confidential source working for the United States Drug Enforcement Administration ("DEA") in Central America in which the participants described the weapons at issue as "American weapons" that were "stolen from the gringos . . . in Iraq."  Yousef, 2010 WL 3377499, at *5.  The Court concluded that "[e]ven if Defendant was not directly responsible for the theft, certainly he and his co-conspirators knew that brokering the black-market sale of American weaponry stolen from an active war-zone would affect the United States Government's military and security interests."  Id.  The Court additionally found the requisite nexus between the charged conspiracy and the United States in:  (1) Yousef's knowledge that the charged weapons-for-

3

cocaine deal with the FARC would arm an international drug-trafficking organization which transports narcotics into the United States; and (2) statements by Yousef's co-conspirators suggesting concern that United States law enforcement agencies could derail the arms-for-cocaine deal.  See id.

Yousef now moves for reconsideration of the denial of his motion to dismiss.  Yousef argues that the prosecutor did not provide a candid response to the Court's question at oral argument about whether the weapons in question were actually stolen from U.S. forces in Iraq.  In support of this argument, Yousef cites to two DEA Form-6 reports of interviews conducted with a man named Hassan Rammal ("Rammal") in Belize in December 2008 and January 2009 that the Government produced on May 31, 2011.  In those meetings, Hassan Rammal told the interviewing agents that he pretended to be a weapons dealer and set up a website featuring pictures of weapons "that he is not actually in possession of, but was just pretending to be in possession of" in order to scam Yousef, his buyer.  (Sarafa Decl., Ex. D, Dec. 12, 2008 Report at ¶ 4).  Additionally, Yousef cites to the prosecutor's acknowledgement at oral argument on June 13, 2011 (regarding an unrelated motion) that photographs of weapons involved in the charged conspiracy appear to be doctored. (Sarafa Decl., Ex. E, June 13, 2011 Tr. at 21).  Defendant's argument seems to be that, based on Hassan Rammal's interviews

4

and the altered pictures, the Government knew that the weapons in question do not exist; as a result, Defendant claims that the prosecutor's statement at oral argument that the weapons were stolen from U.S. forces in Iraq was false, and, as there are no weapons, there is no nexus between the charged conspiracy and the United States.

## II.   Discussion

Although neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules provide for motions for reconsideration, courts in this district have applied Local Civil Rule 6.3 in criminal cases.  See, e.g., United States v. Kassar, 572 F. Supp. 2d 375, 377-78 (S.D.N.Y. 2008); United States v. Yannotti, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006). The standard governing motions for reconsideration is strict, and reconsideration is not warranted "unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Initially, the Court notes that Local Rule 6.3 restricts the time period in which a party can seek reconsideration of an adverse ruling. See S.D.N.Y. Local Civ. R. 6.3 ("Unless otherwise provided by the Court or by statute or rule . . . , a notice of motion for reconsideration or reargument of a court

5

order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion."). In the absence of binding authority to the contrary, several courts in this district have reasoned that "if Local Rule 6.3 is indeed applicable to criminal cases, by default or otherwise, the entire Rule is applicable, including its time limit for filing." Yannotti, 457 F. Supp. 2d at 390. This motion for reconsideration comes eighteen months after the motion to dismiss was resolved, approximately eight months after Defendant's receipt of the DEA Form-6 Reports, and just two weeks prior to the firm trial date. Cf. United States v. Nelson, No. 10 Cr. 414, 2011 WL 2207584, at *6 (S.D.N.Y. June 3, 2011) (denying as untimely motion for reconsideration made two months after evidentiary ruling); United States v. DiPietro, No. 02 Cr. 1237, 2007 WL 3130553, at *2 (S.D.N.Y. Oct. 17, 2007) (denying as untimely motion for reconsideration filed six weeks after ruling); Yannotti, 457 F. Supp. 2d at 390 (denying as untimely motion for reconsideration filed three months after denial of Rule 29 motion). Defense counsel's proffered excuse for the extraordinary delay in seeking reconsideration is that she believed the motion's accusations of prosecutorial misconduct would compromise plea negotiations. The Court does not credit this explanation, particularly in light of the fact that Defendant made several other pre-trial motions, including a

second motion to dismiss the indictment on the basis of outrageous government conduct, on May 3, 2011.  See United States v. Yousef, No. 08 Cr. 1213, 2011 WL 2899244, at *5-9 (S.D.N.Y. June 30, 2011) (denying motion to dismiss indictment on due process grounds where Defendant claimed that U.S. officials kidnapped him from Honduras and forcibly transported him to the United States for prosecution).  Evidently, plea negotiations were able to continue in the nine months following Defendant's accusation of violent governmental abduction, and the Court sees no reason why this motion's specific claim of government misconduct would be the death knell for a plea agreement such that the motion could not have been brought earlier.  The motion for reconsideration appears to be little more than a delay tactic; it is not timely by any measure, and the motion could be denied for this reason alone.

    Nevertheless, the Court finds that the motion for reconsideration fails on its own merits.  The Third Superseding Indictment, on its face, alleges that "the confidential sources represented, and Yousef and his co-conspirators believed, that the weapons were for use by the FARC, and that the FARC would be supplying them with the cocaine."  (S-3 Indictment ¶ 6).  The Indictment further alleges that the FARC is a terrorist organization that "actively attempts to obtain automatic rifles, ammunition, machine guns, [and] explosives," which it uses "to

further its terrorist activities." (Id. ¶ 5). Those terrorist activities include violent acts directed against the United States, its citizens, and its property interests. (Id. ¶¶ 2-3). Thus, the Court could have inferred from the Indictment alone that Yousef allegedly conspired to provide military-grade weapons to a terrorist organization with the understanding that those weapons could be used to attack U.S. citizens abroad - a sufficient nexus with American interests such that Defendant's prosecution in the United States is neither arbitrary nor fundamentally unfair. See Yousef, 327 F.3d at 112.

The Court did not have to draw any inferences from the Indictment regarding Defendant's knowledge because the Government made a proffer of "recorded conversations that provide much of the evidence in the case." (Gov't July 12, 2010 Mem. at 10). It is important to note that Defendant has never challenged the Court's consideration of this evidence, and indeed, now urges the Court to consider additional evidence in determining whether there is a sufficient nexus with the United States. However, Defendant's "new" evidence – the seemingly doctored photographs and the Rammal interviews - go to a factual dispute about Yousef's intent. The Court's function on this motion is not to supplant the jury's determination of whether the photographs are real or whether Rammal was truthful with the DEA. Instead, the issue before the Court is one of due process

8

and whether the Government has satisfied its burden of establishing a sufficient nexus between the charged conduct and the United States.  The recorded co-conspirator conversations adequately demonstrated that nexus, and neither the Rammal interviews nor the photographs give the Court reason to doubt the Government's initial proffer of evidence or the August 23, 2010 opinion.  This ruling should not be read to say that the scam defense cannot succeed at trial, but only that the Government met its burden on a pre-trial motion.

Simply put, the Rammal interviews do not, as Defendant contends, conclusively establish that the weapons do not exist. The DEA records report not only Rammal's claim that he planned to scam Yousef, but also the interviewing agents' skepticism of his story.  For example, the agents pressed Rammal to explain: why Yousef would pay Rammal a down payment of between $500,000 and $1 million "without ever having conducted a transaction with him before, or ever seeing a weapon from him"; how Rammal planned to escape the armed criminals who were the victims of his scam with that down payment; why Rammmal approached the United States DEA to disclose the existence of weapons scam in Honduras; and why, if Rammal's intention was to steal money from Yousef in a scam weapons deal, Rammal voluntarily revealed the scam to law enforcement instead of attempting to effectuate the transaction and getting a large sum of cash.  (Sarafa Decl., Ex.

9

D, Jan. 28, 2009 Report at ¶¶ 7, 9, 11). Rammal had no answer to any of the interviewing agents' questions. (Id.). The DEA Form-6 Reports give contradictory information about the existence of a scam and weapons, and, as a result, it is difficult to reconcile Rammal's statements with the unambiguous recorded co-conspirator conversations. Thus, even if the prosecutor had told the Court about the substance of Rammal's statements at oral argument in August 2010, those statements, considered in conjunction with all other proffered information, would not have altered the Court's conclusion that Defendant's alleged dealing in American weapons created a sufficient nexus between the charged conduct and the United States.

Similarly, the seemingly doctored photographs have no effect on the Court's nexus finding. With no context for the photographs, any information about whether there are additional photographs, or whether all of the photographs are phony or only some, the Court cannot say that they would have changed the determination that the charged conduct had a substantial intended effect on the United States.

Finally, regardless of the origin or authenticity of the weapons, Defendant's motion in no way implicates the Court's finding that Defendant allegedly conspired to do business with an organization that traffics narcotics into the United States – activity the United States Government has an interest in

preventing.  As confirmed by conversations where co-conspirators worried about U.S. law enforcement, the charged conduct sufficiently implicated the interests of the United States such that Defendant reasonably could have anticipated being haled into court here.

### III.   Conclusion

Defendant's motion for reconsideration [Docket No. 54] is denied.

**SO ORDERED.**

Dated:    New York, New York
          March 5, 2012

*John F. Keenan*
John F. Keenan
United States District Judge